IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:05CV210

BEAR HOLLOW, L.L.C., A Florida Limited )
Liability Company, and DEAN DeSANTIS, )
Individually, )
                      )
         **Plaintiffs,** )
                       )
        **vs.** )             **ORDER**
                       )
MOBERK, L.L.C., A North Carolina Limited )
Liability Company, MOBERK TWO, L.L.C., )
A North Carolina Limited Liability Company, )
STEVE MOBERG, Individually, and )
THEODORE V. BERK, JR., Individually, )
                       )
        **Defendants.** )
_____ )

      **THIS MATTER** is before the Court on Defendants' Motion to Dismiss and

Memorandum of Law in Support of the Motion to Dismiss, both filed June 27, 2005.

[Documents ## 13, 14]. On August 19, 2005, Plaintiffs filed a Memorandum of Law in

Opposition to Defendants' Motion to Dismiss. [Document # 19]. On August 26, 2005,

Defendants filed a Reply to Plaintiffs' Memorandum of Law in Opposition to Defendants'

Motion to Dismiss. [Document # 20]. This Motion is now ripe for disposition by the Court.

      Having carefully considered the arguments of the parties, the record, and the applicable

authority, the Court will <u>deny</u> Defendants' Motion to Dismiss.

## I.  FACTUAL AND PROCEDURAL HISTORY

      For purposes of this Motion to Dismiss, the Court accepts the following facts derived

from Plaintiffs' Complaint as true. *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181,

189 (4ᵗʰ Cir. 2002) (noting that "at the motion to dismiss stage, a court must accept the allegations in the complaint as true and view the complaint in the light most favorable to the plaintiff").

Prior to 2005, Plaintiff Dean DeSantis ("DeSantis") had worked with Kevin Cler ("Cler") in residential real estate development and construction. (Compl. ¶ 11). Cler exhibited a thorough knowledge of residential real estate development and, based on their prior business dealings, he gained DeSantis' trust. ( *Id.*).

On February 1, 2005, Defendant Steve Moberg ("Moberg") approached DeSantis with the opportunity for DeSantis to purchase approximately 767 acres of land near Blowing Rock, North Carolina. ( *Id.* ¶ 12). Moberg represented to DeSantis that the property would be ideal for development of a golf course and housing community. ( *Id.*).

DeSantis advised Cler about this property development opportunity. Cler told DeSantis that he would act as his agent in finding out more about the property and would advise DeSantis regarding the viability of the development project proposed by Moberg. ( *Id.* ¶ 13). In exchange for Cler acting as his agent, DeSantis agreed to employ Cler as project manager at an annual salary of $150,000, plus ten percent (10%) of the net profits from the development project, which became known as "Bear Hollow." ( *Id.* ¶ 14).

Acting as DeSantis' agent, Cler made several trips from Florida to North Carolina and met with Moberg and various other officials and architects to discuss the prospect of developing the Bear Hollow property. ( *Id.* ¶ 15). On February 10, 2005, DeSantis, Cler, and Steve Mullen[1]

---

[1]Mr. Mullen was to be the manager of the golf course that DeSantis anticipated putting on the Bear Hollow property. (Compl. ¶ 16).

traveled to North Carolina to inspect the property. ( *Id.* ¶ 16). During this visit, Moberg told DeSantis that he needed to move quickly if he intended to purchase the Bear Hollow property because there was another prospective purchaser. ( *Id.*). To that end, Moberg wanted DeSantis to sign a contract to purchase the property "as is," with no contingencies. ( *Id.*).

On March 2, 2005, relying on Cler's recommendation, judgment, and fidelity, DeSantis signed a contract for the purchase of the Bear Hollow property and paid a $450,000 deposit.[2] ( *Id.* ¶ 17). The purchase price for the Bear Hollow property was $4.5 million. ( *Id.*).

On March 18, 2005, DeSantis closed on the Bear Hollow property and the property was transferred to Bear Hollow, L.L.C. ("Bear Hollow") ( *Id.* ¶ 18). Moreover, on the date of closing, the seller changed from Moberk, L.L.C. ("Moberk") to Moberk Two, L.L.C. ("Moberk Two") ( *Id.*). DeSantis and Bear Hollow (collectively "Plaintiffs") paid the balance of the purchase price to Moberk Two, and the deed for the Bear Hollow property was recorded in the Caldwell County, North Carolina Register of Deed's Office. ( *Id.*).

After the purchase of the Bear Hollow property, Plaintiffs learned for the first time that Moberk Two purchased the property from numerous owners for $3,080,275.66 and, on the same day, sold the property to Plaintiffs for $4.5 million. ( *Id.* ¶ 19). Consequently, Moberg and Berk, through Moberk Two, made a profit of $1,397,986.65 by selling the Bear Hollow property to Plaintiffs. ( *Id.*). Plaintiffs further learned that one or more of the Defendants paid a substantial amount of money to Cler in order to "get the deal done." ( *Id.*). The arrangement between Moberg, Berk, and Cler was not disclosed or consented to by Plaintiffs, as DeSantis believed Cler was acting solely as his agent. ( *Id.*).

---

[2]A copy of the contract is attached to the Complaint.

On June 9, 2005, Plaintiffs filed the instant lawsuit alleging the following nine causes of action against Defendants: (1) fraud; (2) negligent misrepresentation; (3) action to set aside deed for fraud; (4) breach of contract; (5) civil conspiracy; (6) rescission of written instrument due to fraud; (7) punitive damages; (8) unfair and deceptive trade practices; and (9) piercing the corporate veil. On September 7, 2005, Plaintiffs filed an amendment to the Complaint, in which Plaintiffs alleged special damages.

## II. DISCUSSION

Defendants seek to dismiss Plaintiffs' Complaint for failure to plead claims of fraud and negligent misrepresentation with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]

### A.    Standard of Review

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint. *Suarez v. Charlotte-Mecklenburg Schs.*, 123 F. Supp. 2d 883, 885-86 (W.D.N.C. 2000) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In considering a Rule 12(b)(6) motion to dismiss, the court must take the allegations in the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *GE Inv. Private Placement v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). "[Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Jackson v. Blue Dolphin Commc'ns of*

---

[3]See *infra* B.1 for a discussion of the standard of review for a motion to dismiss for failure to plead fraud and negligent misrepresentation with particularity.

*N.C., L.L.C.*, 226 F. Supp. 2d 785, 788-89 (W.D.N.C. 2002) (brackets in original) (quoting *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997)).

To survive a Rule 12(b)(6) motion, "a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Jackson*, 226 F. Supp. 2d at 789 (citation omitted). A motion to dismiss is not limited to claims of law which are obviously unsupportable; rather if, as a matter of law, it is obvious that no relief could be granted under any set of facts alleged by the plaintiff, the claim must be dismissed. *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827 (1989)).

Significantly, although a court must accept as true all material factual allegations in the complaint, the court does not need to accept a plaintiff's "conclusory allegations regarding the legal effect of the facts alleged." *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).

## B.      Fraud and Negligent Misrepresentation (Counts One and Two)

Defendants move for dismissal of Counts One and Two of the Complaint for Plaintiffs' failure to plead claims of fraud and negligent misrepresentation with particularity. (Defs.' Mem. in Supp. pp. 5-10). "Fraud may be committed by suppression of the truth as much as by a false representation." *Carver v. Roberts*, 78 N.C. App. 511, 512, 337 S.E.2d 126, 128 (1985).

> To preclude crafty men [from] find[ing] a way of committing fraud which avoids the definition[,] our appellate courts have abstained from defining fraud in favor of setting forth the following essential elements: (1) False representation or concealment of a [past or existing] material fact [that defendant had a duty to disclose], (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Phelps-Dickson Builders, LLC v. Amerimann Partners*, – N.C. App. –, 617 S.E.2d 664, 670

(N.C. App. 2005) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500

(1974)).

Like a claim for fraud, a negligent misrepresentation claim is based upon some confusion

or delusion of a party, such as by a misrepresentation, omission, misapprehension or

misunderstanding. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 202 (M.D.N.C. 1997).

North Carolina has adopted the Restatement of Torts definition and requirements for negligent

misrepresentation.

> One who in the course of his business or profession supplies information for the
> guidance of others in their business transactions is subject to liability for harm
> caused to them by their reliance upon information if (a) he fails to exercise that
> care and competence in obtaining and communicating the information which its
> recipient is justified in expecting, and (b) the harm is suffered (i) by the person or
> one of the class of persons for whose guidance the information was supplied, and
> (ii) because of his *justifiable reliance* upon it in a transaction in which it was
> intended to influence his conduct or in a transaction substantially identical
> therewith.

*Helms v. Holland*, 124 N.C. App. 629, 634-35, 478 S.E.2d 513, 517 (1996) (quoting *Powell v.*

*Wold*, 88 N.C. App. 61, 67, 362 S.E.2d 796, 799 (1987) (quoting RESTATEMENT (SECOND) OF

TORTS § 552 (1977)).

## 1.    Legal Standard for Pleading Fraud and Negligent Misrepresentation

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake

shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a

person may be averred generally." FED. R. CIV. P. 9(b).  This particularity of pleading

requirement applies to both fraud and negligent misrepresentation claims.  *See Madison River*

*Mgmt. Co. v. Business Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005)

(stating that Rule 9(b) applies to "'all cases where the gravamen of the claim is fraud even

though the theory supporting the claim is not technically termed fraud'") (quoting *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993)).

There are four purposes for Rule 9(b):

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1055, 1056-57 (S.D. Ga. 1990)). The Fourth Circuit has recognized that the "circumstances" required to be pled with particularity under this Rule are "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure: Civil § 1297*, at 590 (2d ed. 1990)); *see also Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990) (noting that "[i]t is well settled under North Carolina law . . . that a complaint claiming fraud is fatally defective unless it alleges detrimental reliance, and damages proximately flowing from such reliance with particularity) (citing *Foley v. L & L Int'l, Inc.*, 88 N.C. App. 710, 714, 364 S.E.2d 733, 736 (1988)). Although mere allegations of "fraud by hindsight" do not satisfy the requirements of Rule 9(b), the second sentence of the Rule allows conclusory allegations of a defendant's knowledge as to the true facts and of the defendant's intent to deceive. *Harrison*, 176 F.3d at 784 (citing *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994); 5 WRIGHT AND MILLER § 1297, at 612).

"A cause of action for fraud is based on an affirmative misrepresentation of a material fact . . . or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986) (citing *Harbach v. Lain & Keonig, Inc.*, 73 N.C. App. 374, 326 S.E.2d 115 (1985); *Curl ex rel. Curl v. Key*, 311 N.C. 259, 316 S.E.2d 272 (1984)). The particularity of pleading requirement is especially applicable to cases of affirmative misrepresentation because such are discrete, observable events that can be particularized. *Breeden*, 171 F.R.D. at 195. "An affirmative misrepresentation involves a specific statement made at a specific place and time and involves specific persons." *Id.*

In contrast, however, fraudulent concealment or fraud by omission is, by its very nature, difficult to plead with particularity. *Id.* Although fraud by omission consists of non-action, there are specific factors a plaintiff can use to find when, where, how and what duty was created and then those factors must be stated with particularity to fairly apprise the defendant of the charges. *Id.* In cases of fraud by omission, in order to comply with the pleading requirements of Rule 9(b), the plaintiff must allege the following with reasonable particularity: (1) the relationship giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what those defendants gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance. *Breeden*, 171 F.R.D. at 195-96 (citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp.

587, 598 (E.D. La. 1993); *Moretz*, 898 F.2d at 421; *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987)).

"While the facts constituting the fraud must be alleged with particularity, there is no requirement that any precise formula be followed or that any certain language be used." *Carver*, 78 N.C. App. at 513, 337 S.E.2d at 128. "'It is sufficient if, upon a liberal construction of the whole pleading, the charge of fraud might be supported by proof of the alleged constitutive facts.'" *Id.* (quoting *Brooks Equip. & Mgf. Co. v. Taylor*, 230 N.C. 680, 686, 55 S.E.2d 311, 315 (1949)). "Although Rule 9(b) requires that the requisite factual allegations be pled with particularity, this mandate 'does not contradict the theory of notice pleading embraced by the Federal Rules in general, and Rule 8, in particular.'" *Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP*, 394 F. Supp. 2d 762, 772 (M.D.N.C. 2005) (quoting *Angell v. Kelly*, 336 F. Supp. 2d 540, 549 (M.D.N.C. 2004)). Significantly, a court should not dismiss a complaint pursuant to Rule 9(b) if the court is satisfied that the defendant has been made aware of the particular circumstances for which he will have to prepare a defense at trial, and the plaintiff has substantial pre-discovery evidence of those facts. *Harrison*, 176 F.3d at 784.

## 2.   **Duty to disclose**

In the instant case, Plaintiffs allege fraud and negligent misrepresentation by omission, that is that Defendants did not disclose to Plaintiffs the secret agreement between Defendants and Cler, thus leading Plaintiffs to believe that Cler was acting solely as their agent and in Plaintiffs' best interest. (Compl. ¶¶ 19, 22, 25).

Under North Carolina law,

in order for silence or an omission by the defendants to be actionable fraud, it

must relate to a material matter known by the defendants which they had a legal duty to communicate to plaintiff, "whether that duty arose from a relation of trust, from confidence, inequality of condition or knowledge, or other attendant circumstances."

*Breeden*, 171 F.R.D. at 196 (quoting *Setzer v. Old Republic Life Ins. Co.*, 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962)).  A legal duty to disclose arises in three situations.  *Harton*, 81 N.C. App. at 297, 344 S.E.2d at 119.  The first instance is where a fiduciary relationship exists between the parties to the transaction.  *Id.* (citing *Link v. Link*, 278 N.C. 181, 179 S.E.2d 697 (1971)).[4]

The second situation giving rise to a duty to disclose is where the parties are negotiating at arm's length and one party takes affirmative steps to conceal materials facts from the other. *Harton*, 81 N.C. App. at 298, 344 S.E.2d at 119 (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974)); *see also Everts v. Parkinson*, 147 N.C. App. 315, 321, 555 S.E.2d 667, 672 (2001) (noting "'[w]here a material defect is known to the seller, and he knows that the buyer is unaware of the defect and that it is not discoverable in the exercise of the buyer's diligent attention or observation, the seller has a duty to disclose the existence of the defect to the buyer'") (quoting *Carver*, 78 N.C. App. at 512-13, 337 S.E.2d at 128).  A fact is "material" if the "'fact untruly asserted or wrongfully suppressed, if it had been known to the party, would have influenced [its] judgment or decision in making the contract at all.'" *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 75-76, 598 S.E.2d 396, 402 (2004) (quoting *Machine Co. v. Bullock*, 161 N.C. 1, 7, 76 S.E. 634, 636 (1912)).

The final instance where a party negotiating at arm's length has a duty to disclose is

---

[4]The Court notes that neither Plaintiffs nor Defendants contend that there was a fiduciary relationship between the parties.

where one party has knowledge of a latent defect in the subject matter of the negotiations of which the other party is ignorant and which it is unable to discover through reasonable diligence. *Harton*, 81 N.C. App. at 298, 344 S.E.2d at 119 (citing *Brooks v. Ervin Constr. Co.*, 253 N.C. 214, 116 S.E.2d 454 (1960)). A "latent defect" is an imperfection that is not discoverable by reasonable inspection. BLACK'S LAW DICTIONARY (8th Ed. 2004). Significantly, "even if a party otherwise has no duty to disclose a particular matter, should that party speak about it, then a full and fair disclosure may be required." *Breeden*, 171 F.R.D. at 196 (citing *Shaver v. N.C. Monroe Constr. Co.*, 63 N.C. App. 605, 614, 306 S.E.2d 519, 525 (1983), *review denied*, 310 N.C. 154, 311 S.E.2d 294 (1984)).

In the instant case, Defendants maintain that Plaintiffs' Complaint provides no factual basis upon which a legal duty would arise for Defendants, vendors of the real estate, to disclose to Plaintiffs, purchasers of the real estate, the amount of profits earned or fees paid in the transaction. (Defs.' Mem. in Supp. p. 7). Consequently, Defendants argue that Counts One and Two of the Complaint should be dismissed for failure to plead claims of fraud and negligent misrepresentation with the particularity required by Rule 9(b).

In response, Plaintiffs argue that Defendants took affirmative steps to conceal material facts from them. (Pls.' Resp. pp. 5-6). In sum, Plaintiffs maintain that Moberg told DeSantis that he would sell the land to DeSantis for $4.5 million, but never disclosed that a substantial part of Plaintiffs' $4.5 million was not for the purchase of the land but was for Plaintiffs' agent, Cler. ( *Id.* p. 6). Plaintiffs further state that Defendants knew of a latent defect in the subject matter of their dealings with Plaintiffs about which Plaintiffs were ignorant and unable to discover through reasonable diligence. ( *Id.* p. 7). Only after the closing on the Bear Hollow property were

Plaintiffs apprised that Defendants made an agreement with Cler to "get the deal done." (Compl. ¶ 19).

Since this matter is before the Court on a Motion to Dismiss, and taking the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs sufficiently alleged a legal basis upon which Defendants had a duty to disclose the fees paid to Plaintiffs' agent in the sale of the Bear Hollow property. First, Defendants Moberg and Berk (through Moberk Two) took affirmative steps to conceal from Plaintiffs the payment of fees to Cler. Specifically, DeSantis advised Moberg that he was interested in purchasing the property "if, and only if, Cler, acting as DeSantis' agent, would investigate the purchase of the property and such development and would recommend to DeSantis that he purchase the property for the price demanded by Moberg. DeSantis told Moberg that he would not be interested in the purchase and development of the property without Cler's recommendation." (*Id.* ¶ 12). Armed with this information, Moberg, Berk. and Cler entered into a "*secret agreement* not previously disclosed or consented to by DeSantis" whereby Cler was paid $25,000 from Moberg and $25,000 from Berk to "get the deal done." (*Id.* ¶ 19) (emphasis added). The Court finds that, taken in the light most favorable to Plaintiffs, this "secret agreement" was a material fact as it is plausible that had Plaintiffs known of the payment of fees from Moberg and Berk to Cler, this information would have influenced Plaintiffs' judgment in entering the contract to purchase the Bear Hollow property.

Moreover, taking the facts in the light most favorable to Plaintiffs, Defendants had knowledge of a latent defect in the subject matter of the negotiations of which Plaintiffs were ignorant and which was not amenable to discovery through reasonable diligence. That is, in a secret agreement not disclosed or consented to by DeSantis, Defendants Moberg and Berk paid

Cler a total of $50,000 to "get the deal done." ( *Id.*).  Certainly, construing the facts in favor of Plaintiffs, paying the Plaintiffs' agent in order to induce Plaintiffs to purchase property constitutes an imperfection that was not discoverable by Plaintiffs.  According to the facts alleged, in purchasing Cler's loyalty, Defendants knowingly and secretly subverted Cler's loyalty to Plaintiffs.  Therefore, the Court finds for purposes of this Motion to Dismiss that Plaintiffs have sufficiently alleged that Defendants owed them a legal duty.

### 3.    Identification of Defendants

Defendants further argue that Plaintiffs have failed to identify which specific Defendant is responsible for or participated in the alleged fraud.  (Defs.' Mot. to Dismiss pp. 8-9).  The Court disagrees with Defendants.

Where multiple defendants are asked to respond to fraud allegations, the complaint should inform each defendant of the nature of his individual participation in the fraud.  *Andrews v. Fitzgerald*, 823 F. Supp. 356, 373 (M.D.N.C. 1993) (quoting *Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2nd Cir. 1987)).  Taken in the light most favorable to Plaintiffs, the Complaint clearly alleges, ". . . after the purchase of the property, Cler disclosed to DeSantis that he (Cler) had been paid *$25,000 from Moberg* and *$25,000 from Berk* to 'get the deal done.' Any *arrangement between Moberg, Berk, and Cler was a secret agreement* not previously disclosed or consented to by DeSantis."  (Compl. ¶ 19) (emphasis added).  Based on these allegations, each Defendant is aware of the nature of his individual participation in the fraud and Defendants have sufficient information to formulate a defense by putting them on notice of the misconduct alleged by Plaintiffs.  Therefore, Counts One and Two of Plaintiffs' Complaint should not be dismissed on this basis.

## 4.    Allegations of justifiable reliance

Defendants also contend that Plaintiffs have failed to allege any facts showing that they justifiably relied on an alleged concealment or misrepresentation when they purchased the Bear Hollow property. (Defs.' Mem. in Supp. p. 9). Plaintiffs argue that Moberg and Berk's silence about their clandestine deal with Cler amounted to a positive assertion upon which Plaintiffs relied. (Pls.' Resp. p. 10).

"Reasonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud . . . and such reliance must be pleaded with particularity." *Learning Works,* 830 F.2d at 546 (citing *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 629 (4th Cir.), *cert. denied*, 434 U.S. 923, 98 S. Ct. 400, 54 L. Ed. 2d 280 (1977); Fed. R. Civ. P. 9(b)). Justifiable reliance is an essential element for both fraud and negligent misrepresentation claims. *Helms*, 124 N.C. App. at 635, 478 S.E.2d at 517 (citing *C.F.R. Foods, Inc. v. Randolph Dev. Co.*, 107 N.C. App. 584, 588, 421 S.E.2d 386, 389, *disc. review denied*, 333 N.C. 166, 424 S.E.2d 906 (1992); *APAC-Carolina, Inc. v. Greensboro-High Point Airport Auth.*, 110 N.C. App. 664, 680, 431 S.E.2d 508, 517, *disc. review denied*, 335 N.C. 171, 438 S.E.2d 197 (1993)). The reason for requiring a showing of reasonable reliance is explained as follows:

> The right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest.

*Everts*, 147 N.C. App. at 325, 555 S.E.2d at 676 (quoting *Calloway v. Wyatt*, 245 N.C. 129, 134-35, 97 S.E.2d 881, 886 (1957)).

However, in the context of a claim of fraud based upon breach of a duty to disclose a material fact, a showing of reasonable reliance is redundant and an unnecessary element. *Everts*, 147 N.C. App. at 325-26, 555 S.E.2d at 674-75. This is because in order to establish fraud based on a seller's failure to disclose material defects, a buyer must, in part, show that the material defects were "'not discoverable in the exercise of the buyer's diligent attention or observation.'" *Everts*, 147 N.C. App. at 325, 555 S.E.2d at 674 (quoting *Carver*, 78 N.C. App. at 512-13, 337 S.E.2d at 128). A seller who knowingly conceals a material fact to the detriment of the buyer will not be heard to complain of the absence of proof of reliance, the evidence of which would have materialized only upon a timely disclosure of the omitted facts to the buyer. In such an instance, it was the seller's own covert act which deprived the buyer of the ability to react at the critical time to the information withheld. It might be said that the law implies reliance under such circumstances.

In the instant case, as described above, the Court found for purposes of this Motion to Dismiss that Defendants failed to disclose material facts to Plaintiffs. ( *See Supra* Section II.B.2). Therefore, showing reasonable reliance by Plaintiffs is unnecessary.

Nevertheless, even if Plaintiffs had to establish justifiable reliance, Plaintiffs made sufficient allegations in their Complaint. In sum, Plaintiffs alleged that DeSantis advised Moberg that he would not purchase the Bear Hollow property unless his agent, Cler, recommended that Plaintiffs purchase the property for the price demanded by Moberg. (Compl. ¶ 12). Therefore, Defendants knew that DeSantis was relying on Cler in deciding whether to purchase the land. Subsequently, in a secret agreement, Defendants Moberg and Berk agreed to pay Cler $50,000 in order to "get the deal done." ( *Id.* ¶ 19). This agreement was not previously

disclosed or consented to by Plaintiffs and Plaintiffs believed that Cler was acting solely as their

agent. (*Id.*).  Taken in the light most favorable to Plaintiffs, this agreement was not discoverable

in the exercise of Plaintiffs' diligent attention or observation because it was a "secret agreement."

( *Id.*).  Since Plaintiffs' have established that this secret agreement was not discoverable in the

exercise of their diligent attention or observation and a reasonable person, in the exercise of

ordinary care for his own welfare, would not have discovered this concealment, the Court finds

that Plaintiffs' sufficiently alleged justifiable reliance on Defendants' concealment of material

facts.

    **5.**        **Injury resulting from nondisclosure or concealment**

Finally, Defendants argue that Plaintiffs have not sufficiently alleged that they suffered

injury resulting from the nondisclosure or concealment by Defendants.  (Defs.' Mem. in Supp. p.

10).

"In order to prove fraud . . . a plaintiff is also required to prove that he suffered damages

because of his reliance on the defendant's representation." *Wall v. Fry*, 162 N.C. App. 73, 78,

590 S.E.2d 283, 287 (2004) (citing *Davis v. Sellers*, 115 N.C. App. 1, 10, 443 S.E.2d 879, 884

(1994)).  In the instant case, Plaintiffs alleged special damages flowing as a direct and proximate

result of the fraud.  (Am. Compl. ¶ 23(a)).  Since this is a Motion to Dismiss, taking the facts in

the light most favorable to Plaintiffs, the Court concludes that Plaintiffs sufficiently alleged

damages resulting from Defendants' concealment of material facts.

In sum, this Court is satisfied that the Defendants have been made aware of the particular

circumstances for which they will have to prepare a defense at trial, and the Plaintiffs have

sufficiently alleged facts in support of their fraud and negligent misrepresentation claims.

Therefore, Defendants' Motion to Dismiss Counts One and Two of the Complaint is <u>denied</u>.

**C.    Action to Set Aside Deed for Fraud and Rescission of Written Instrument Due to Fraud (Counts Three and Six)**

Defendants argue that the remedies for equitable relief sought by Plaintiffs in Counts Three and Six are moot and barred by the election of remedies doctrine.  (Defs.' Mem. in Supp. p. 10).  Defendants maintain that Plaintiffs are barred by the doctrine of election of remedies from seeking both rescission of the contract and for recovery of general monetary damages.  In response, Plaintiffs note that they are not required to elect their remedies at this stage of litigation and alternative remedies have been properly pled in the Complaint.  (Pls.' Resp. pp. 10-11).

"The doctrine of election of remedies 'refers to situations where an individual pursues remedies that are legally or factually inconsistent.'" *Pension Benefit Guar. Corp. v. Beverley*, 404 F.3d 243, 250 (4th Cir. 2005) (quoting *Artis v. Norfolk & Western Ry. Co.*, 204 F.3d 141 (4th Cir. 2000)).  "'The purpose of the doctrine of election of remedies is not to prevent recourse for any remedy, but to prevent double redress for a single wrong.'" *Canady v. Mann*, 107 N.C. App. 252, 256, 419 S.E.2d 597, 600 (1992) (quoting *Smith v. Gulf Oil Corp.*, 239 N.C. 360, 368, 79 S.E.2d 880, 885 (1954)).  Notably, "[a]lthough a party may assert claims for money damages based on fraud, breach of contract, and unfair and deceptive trade practices, he may succeed on only one basis."  *Winant v. Bostic*, 5 F.3d 767, 775 (4th Cir. 1993).  For example, "'[a] plaintiff may not sue for the rescission of a contract and its breach at the same time.  The one is in disaffirmance of the contract; the other in its affirmance.'" *Lumsden v. Lawing*, 107 N.C. App. 493, 502, 421 S.E.2d 594, 599-600 (1992) (quoting *Troitino v. Goodman*, 225 N.C. 406, 415, 35 S.E.2d 277,

283 (1945)).  However, in the case of rescission of a contract due to fraud, a party may recover

special damages.  *Lumsden*, 107 N.C. App. at 600, 421 S.E.2d at 502.  In sum,

> [o]rdinarily, a suit for rescission of a contract may not be joined with an action for
> its breach or damages for fraud, but where special damages have been sustained as
> the result of the fraud practiced, rescission of the contract will not bar a recovery
> for damages.  The rule is, if rescission of the contract does not place the injured
> party *in statu quo*, as where he has suffered damages which cancellation of the
> contract cannot repair, there is no principle of law which prevents him from
> maintaining his action for damages caused by the other party's fraud.

*Canady*, 107 N.C. App. at 256-57, 419 S.E.2d at 601 (quoting *Kee v. Dillingham*, 229 N.C. 262,

265, 49 S.E.2d 510, 512 (1948)).

In the instant case, Plaintiffs pled actual and compensatory damages, special damages,

rescission of contract, punitive damages, and attorneys' fees and costs.  The Court agrees with

Plaintiffs that they are permitted to plead alternative theories of damages in their Complaint and a

Motion to Dismiss as to their damages theories is improper.  *See* FED. R. CIV. P. 8(a) (stating

"[r]elief in the alternative or of several different types may be demanded").  Therefore,

Defendants' Motion to Dismiss is <u>denied</u> with regard to Counts Three and Six of the Complaint.

### D.     Breach of Contract (Count Four)

Defendants move to dismiss Count Four of Plaintiffs' Complaint, alleging that Plaintiffs

have failed to state an actionable claim for breach of contract. (Defs.' Mem. in Supp. pp. 11-13).

In response, Plaintiffs state that Defendants entered into the contract for the sale of the Bear

Hollow property in bad faith and contrary to their implied duties of good faith and fair dealing

and, therefore, Plaintiffs are entitled to recover damages resulting from such breach. (Pls.' Resp.

pp. 11-12).

In addition to its express terms, a contract contains all terms "that are necessarily implied 'to effect the intention of the parties' and which are not in conflict with the express terms." *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (quoting *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973)). One such implied term is "the 'basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement.'" *Id.* (quoting *Weyerhaeuser Co. v. Godwin Bldg. Supply Co*, 40 N.C. App. 743, 746, 253 S.E.2d 625, 627 (1979)); *see also Governors Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 251, 567 S.E.2d 781, 789 (2002) (stating "'[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement'") (quoting *Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985)). "All parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an agreement, and therefore each has a duty to adhere to the presuppositions of the contract for meeting this purpose." *Maglione*, 169 N.C. App. at 56, 607 S.E.2d at 291 (citing *Weyerhaeuser*, 40 N.C. App. at 746, 253 S.E.2d at 627).

In the instant case, Plaintiffs alleged:

32.  Plaintiff Bear Hollow L.L.C., through DeSantis, and Defendants Moberk, L.L.C. and Moberk Two L.L.C., by and through Moberg and Berk, entered into a contract for the purchase of land, as more fully described herein, for due consideration and for the purpose of the sale of property to the Plaintiffs.

33.  These Defendants violated the implied warranty of good faith and fair dealing by not disclosing to DeSantis that Cler had a secret agreement with Defendants, and, therefore, Defendants, with the aid and assistance of Cler, effectuated the sale of Bear Hollow to Plaintiffs through misrepresentation, deceit

and false pretenses, such that the sale was not an arms-length transaction.

34.     As a direct and proximate result of these Defendants' breach of contract, Plaintiffs are entitled to have the transaction rescinded and the money paid for the Bear Hollow property returned to Plaintiffs, including all costs and fees related thereto.

(Compl. ¶¶ 32-34).  After carefully reviewing the Complaint and taking all allegations contained therein in the light most favorable to Plaintiffs, the Complaint sufficiently alleges adequate facts to survive a Rule 12(b)(6) motion to dismiss on Plaintiffs' breach of contract claim.  Therefore, Defendants' Motion to Dismiss Count Four is hereby <u>denied</u>.

**E.     Civil Conspiracy (Count Five)**

Defendants maintain that Plaintiffs' civil conspiracy claim should be dismissed since the wrongful act alleged in the civil conspiracy claim is derived of the same facts and legal theories used to substantiate Plaintiffs' allegations of fraud, negligent misrepresentation, and breach of contract.  (Defs.' Mem. in Supp. pp. 13-14).  Defendants further allege that the civil conspiracy claim should be dismissed based upon the intracorporate conspiracy doctrine. (*Id.*).  Plaintiffs argue that they have properly pled a civil conspiracy claim and the doctrine of intracorporate conspiracy is inapplicable to the case at bar.  (Pls.' Resp. pp. 12-15).

There is no independent cause of action for civil conspiracy.   *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002) (citing *Shope v. Boyer*, 268 N.C. 401, 150 S.E.2d 771 (1966)).  "Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two of more parties to carry out the conduct and injury resulting from that agreement." *Id.* (citing *Muse v. Morrison*, 234 N.C. 195, 66 S.E.2d 783 (1951)); *see also Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984)

(noting that "[t]he gravamen of the action is the resultant injury and not the conspiracy itself") (citing *Shope*, 268 N.C. 401, 150 S.E.2d 771). "While there is no recognized action for civil conspiracy in North Carolina . . . our law nevertheless permits one defrauded to recover from anyone who facilitated the fraud by agreeing for it to be accomplished." *Nye v. Oates*, 96 N.C. App. 343, 346-47, 385 S.E.2d 529, 531 (1989) (citing *Fox v. Wilson*, 85 N.C. App. 292, 354 S.E.2d 737 (1987)).

A civil conspiracy claim consists of: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement resulted in injury to the plaintiff. *Boyd v. Drum*, 129 N.C. App. 586, 592, 501 S.E.2d 91, 96 (1998) (citing *Stewart v. Kopp*, 118 N.C. App. 161, 165, 454 S.E.2d 672, 657, *disc. review denied*, 340 N.C. 263, 456 S.E.2d 838 (1995)); *see also Henry*, 310 N.C. at 87, 310 S.E.2d at 334 (stating "[t]o create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective") (citing *Muse*, 234 N.C. 195, 66 S.E.2d 783). A complaint that alleges a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury is sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6). *Henry*, 310 N.C. at 87, 310 S.E.2d at 334 (citing *Muse*, 234 N.C. 195, 66 S.E.2d 783). Moreover, "[a]lthough an action for civil conspiracy may be established by circumstantial evidence, sufficient evidence of the agreement must exist 'to create more than a suspicion or conjecture in order to justify submission of the issue to a jury.'" *Boyd*, 120 N.C. App. 592, 501 S.E.2d at 96 (quoting *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981)).

An exception to a civil conspiracy claim is the intracorporate conspiracy doctrine.

It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (4th Cir. 1952), *cert. denied*, 345 U.S. 925, 73 S. Ct. 783, 97 L. Ed. 1356 (1953)). Moreover, "'[s]imply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation. The plaintiffs must also allege that they acted other than in the normal course of their corporate duties.'" *Buschi*, 775 F.2d at 1252 (quoting *Cole v. University of Hartford*, 391 F. Supp. 888, 893 (D. Conn. 1975)). However, where the plaintiff alleges that the corporate employees were controlled by personal motives or where their actions exceeded the bounds of their authority, the intracorporate conspiracy doctrine is inapplicable. *Id.* (quoting Note, *The Impact of Novotory v. Great American Federal Savings & Loan Association,* 13 Ga. L. Rev. 591, 608 (1979)).

In the instant case, Plaintiffs alleged that Defendants Moberg and Berk entered into a "secret agreement" with Cler, which consisted of one or more express, implied, or tacit resolutions to do one or more unlawful acts or lawful acts in an unlawful way, which resulted in damages to Plaintiffs. (Compl. ¶¶ 19, 36-37). These allegations are sufficient to overcome a Rule 12(b)(6) motion. Additionally, Plaintiffs allege that Defendants Moberg and Berk entered into the agreement "with others," and specifically with Cler. (*Id.* ¶¶ 19, 36). Since Defendants and Cler are not all agents of the same corporation, the intracorporate conspiracy doctrine is an inapplicable defense in support of Defendants' Motion to Dismiss. *See Buschi*, 775 F.2d at 1251

(noting that the intracorporate conspiracy doctrine prohibits civil conspiracy claim where conspiracy is between the corporation and its agents). In sum, Plaintiffs' allegations of civil conspiracy are sufficient to overcome Defendants' Motion to Dismiss and this Motion is <u>denied</u> as to Count Five of the Complaint.

## F.    Punitive Damages (Count Seven)

Defendants argue that since Plaintiffs cannot maintain underlying causes of action for fraud and negligent misrepresentation, their cause of action for punitive damages has no merit under North Carolina law. (Defs.' Mem. in Supp. p. 15). Plaintiffs disagree, arguing that their claims have been properly pled and contending that punitive damages are especially appropriate in this case due to the "egregious nature of the Defendants' conduct." (Pls.' Resp. p. 15).

"'It is generally held that punitive damages are those damages which are given in addition to compensatory damages because of the wanton, reckless, malicious, or oppressive character of the acts complained of.'" *Watson v. Dixon*, 352 N.C. 343, 348, 532 S.E.2d 175, 178 (2000) (quoting *Oestreicher v. American Nat'l Stores, Inc.*, 290 N.C. 118, 134, 225 S.E.2d 797, 807-08 (1976)). Punitive damages are used to punish defendants and deter others. *Id.* (quoting *Oestreicher*, 290 N.C. at 134, 225 S.E.2d at 807-08). A plaintiff cannot maintain a cause of actions for punitive damages standing alone. *Id.* (quoting *Oestreicher*, 290 N.C. at 134, 225 S.E.2d at 807-08). "If the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a prerequisite for a punitive damage award." *Id.*

Since the Court concluded that Plaintiffs' causes of action for fraud, negligent

misrepresentation, and civil conspiracy were sufficiently pled to overcome Defendants' Motion

to Dismiss, the Court likewise finds that Plaintiffs' claim for punitive damages should not be

dismissed at this stage in the litigation. Whether Plaintiffs will be able to recover punitive

damages depends on whether they will be able to maintain their various causes of action beyond

this Motion to Dismiss.[5]  Therefore, Defendants' Motion to Dismiss Plaintiffs' punitive damages

claim is <u>denied</u>.

## G.    Unfair and Deceptive Trade Practices (Count Eight)

Defendants argue that since Plaintiffs have failed to plead actionable claims for fraud and

negligent misrepresentation, they have no legal basis upon which to maintain a claim for unfair

and deceptive trade practices, and, in any event, the Complaint does not establish the *prima face*

elements of such a claim.  (Defs.' Mem. in Supp. p. 16).  Plaintiffs respond by arguing that they

have alleged all the requisite elements of an unfair and deceptive trade practice claim, and note

that an action for unfair and deceptive trade practices is not dependent upon the elements of a

fraud claim or any other cause of action.  (Pls.' Resp. pp. 15-17).

North Carolina law prohibits unfair and deceptive acts which undermine ethical standards

and good faith dealings between parties engaged in business transactions.  *First Atlantic Mgmt.*

*Corp. v. Dunlea Realty, Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998) (citing N.C.

GEN. STAT. §§ 75-1.1 through 75-89 (1994); *Pleasant Valley Promenade v. Lechmere, inc.*, 120

N.C. App. 650, 657, 464 S.E.2d 47, 54 (1995)).  In sum, "[u]nfair methods of competition in or

affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are

---

[5]Defendants correctly state that punitive damages are not available as an award for a breach of contract claim.  *See Shore v. Farmer*, 351 N.C. 166, 170, 522 S.E.2d 73, 76 (1999).

declared unlawful." N.C. GEN. STAT. § 75-1.1(a).

To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) that the plaintiff was injured thereby. *First Atlantic*, 131 N.C. App. at 252, 507 S.E.2d at 63 (citing *Canady*, 107 N.C. App. at 260, 419 S.E.2d at 602; N.C. GEN. STAT. § 75-1.1 (1994)); *see also Phelps-Dickson Builders,* – N.C. App. –, 617 S.E.2d at 671.  A trade practice is "unfair" if it "'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *First Atlantic*, 113 N.C. App. at 252, 507 S.E.2d at 63 (quoting *Johnson v. Phoenix Mutual Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *overruled on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988)).  Moreover, a trade practice is "deceptive" if it "'possesse[s] the tendency or capacity to mislead, or create[s] the likelihood of deception.'" *First Atlantic*, 113 N.C. App. at 252, 507 S.E.2d at 63 (quoting *Forsyth Memorial Hosp. v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 170 (1992), *disc. review denied*, 333 N.C. 344, 426 S.E.2d 705 (1993)).  In determining whether a representation is deceptive, its effect on the average consumer is considered.  *Canady*, 107 N.C. App. at 260, 419 S.E.2d at 602.  Additionally, "[a] misrepresentation may constitute an unfair and deceptive trade practice under G.S. § 75-1.1 . . . but deliberate acts of deceit or bad faith need not be shown." *First Atlantic*, 113 N.C. App. at 254, 507 S.E.2d at 64 (citing *Hardy v. Toler*, 288 N.C. 303, 311, 218 S.E.2d 342, 347 (1975); *Contreras*, 107 N.C. App. at 614, 421 S.E.2d at 170, *disc. review denied*, 333 N.C. 344, 426 S.E.2d 705 (1993)).

An action for unfair and deceptive trade practices is a distinct claim from fraud, breach of

contract, or breach of warranty. *Canady*, 107 N.C. App. at 259, 419 S.E.2d at 602 (citing *Bernard v. Cent. Carolina Truck Sales*, 68 N.C. App. 228, 232, 314 S.E.2d 582, 585, *disc. review denied*, 311 N.C. 751, 321 S.E.2d 126 (1984)). Although they are separate claims, and a plaintiff may assert causes of action for fraud, breach of contract, and unfair and deceptive trade practices, the plaintiff may only recover on one claim. *Canady*, 107 N.C. App. at 259, 419 S.E.2d at 602 (citing *Wilder v. Hodges*, 80 N.C. App. 333, 334, 342 S.E.2d 57, 58 (1986); *Marshall v. Miller*, 47 N.C. App. 530, 542, 268 S.E.2d 97, 103, *modified and aff'd*, 302 N.C. 539, 276 S.E.2d 397 (1981)). Moreover, even though a plaintiff does not have to prove fraud, bad faith, or intentional deception in order to establish a claim for unfair and deceptive trade practices, proof of fraud necessarily constitutes a violation of the statute. *Canady*, 107 N.C. App. at 260, 419 S.E.2d at 602.

In the instant case, since proof of fraud constitutes a violation of Section 75-1.1 and, as discussed above, the Court finds that Plaintiffs can maintain their claims for fraud and negligent misrepresentation, Plaintiffs' unfair and deceptive trade practices claim survives Defendants' Rule 12(b)(6) motion. Additionally, Plaintiffs have sufficiently alleged the elements of an unfair and deceptive trade practices claim. Specifically, Plaintiffs alleged that Defendants, through Moberg and Berk, engaged in unfair and deceptive acts or practices in or affecting commerce, which directly and proximately resulted in damage to Plaintiffs. (Compl. ¶¶ 19, 45, 46). Therefore, Defendants' Motion to Dismiss Count Eight of the Complaint is <u>denied</u>.

## H.     Piercing the Corporate Veil (Count Nine)

Defendants finally argue that the Court should dismiss Count Nine, in which Plaintiffs

allege the right to pierce the corporate veil of Moberk and Moberk Two. (Defs.' Mem. in Supp. pp. 17-18). Defendants maintain that Plaintiffs have not offered any justification for disregarding the corporate entity and have stated no facts indicating that Moberg and Berk "controlled" either Moberk or Moberk Two in an unlawful manner with the intent to commit fraud or a wrong. (*Id.* p. 18). In sum, Defendants state that "Plaintiffs have offered no factual basis to suggest that they have incurred a loss which would be remedied by piercing the corporate veil." (*Id.*).

Plaintiffs respond by arguing that their allegations in support of piercing the corporate veil sufficiently meet the "short and plaint statement" requirements of Rule 8 of the Federal Rules of Civil Procedure. (Pls.' Resp. pp. 17-18). Plaintiffs state that the factual considerations to determine the applicability of the instrumentality rule are inappropriate in ruling on a Rule 12(b)(6) motion to dismiss. (*Id.* p. 18). Since facts establishing the right to pierce the corporate veil will be disclosed during discovery, a Motion to Dismiss Count Nine is premature. (*Id.*).

It is well established that courts will disregard the corporate form or "pierce the corporate veil," thereby extending liability for corporate obligations beyond the confines of a corporation's separate entity, whenever needed to prevent fraud or to achieve equality. *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985) (citing 18 AM. JUR. 2D, *Corporations* § 15 (1965)). In North Carolina, the "instrumentality rule" forms the basis for piercing the corporate veil. *Glenn*, 313 N.C. at 454, 329 S.E.2d at 330. In sum,

> [a] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.

*Id.* (quoting *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 s.E.2d 570, 575 (1966)); *see*

*also Keener Lumber Co., Inc. v. Perry*, 149 N.C. App. 19, 37, 560 S.E.2d 817, 829 (2002)

(stating that piercing the corporate veil allows a plaintiff to impose legal liability for the

corporation's obligations or torts committed by the corporation upon some other company or

individual that controls and dominates the corporation).  The theory of liability underlying the

instrumentality rule is an equitable doctrine.  *Glenn*, 313 N.C. at 458, 329 S.E.2d at 332.

> Its purpose is to place the burden of the loss upon the party who should be
> responsible.  Focus is upon reality, not form, upon the operation of the
> corporation, and upon the defendant's relationship to that operation.  It is not the
> presence or absence of any particular factor that is determinative.  Rather, it is a
> combination of factors which, when taken together with an element of injustice or
> abuse of corporate privilege, suggest that the corporate entity attacked had 'no
> separate mind, will or existence of its own,' and was therefore the 'mere
> instrumentality or tool' of the dominant corporation.

*Id.*

"The 'piercing the corporate veil' doctrine is 'a drastic remedy' and 'should be invoked

only in an extreme case where necessary to serve the ends of justice.'" *Keener Lumber*, 149 N.C.

at 37, 569 S.E.2d at 829 (quoting *Dorton v. Dorton*, 77 N.C. App. 667, 672, 336 S.E.2d 415, 419

(1985)).  Three elements that support a claim for piercing the corporate veil are:

> (1) Control, not mere majority or complete stock control, but complete
> domination, not only of finances, but of policy and business practice in respect to
> the transaction attacked so that the corporate entity as to this transaction had at the
> time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong,
> to perpetrate the violation of a statutory or other positive legal duty, or a dishonest
> and unjust act in contravention of a plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or
> unjust loss complained of.

*Glenn*, 313 N.C. at 454-55, 329 S.E.2d at 330 (quoting *Spencer,* 268 N.C. at 9, 149 S.E.2d at

576).  Factors that are considered in determining whether the corporate veil has been pierced

include inadequate capitalization, non-compliance with corporate formalities, complete

domination and control of the corporation so that it has no independent identity, excessive

fragmentation of a single enterprise into separate corporations, non-payment of dividends,

insolvency of the debtor corporation, siphoning of funds by the dominant shareholder, non-

functioning of other officers or directors, and absence of corporate records.  *Glenn*, 313 N.C. at

455-58. 329 S.E.2d at 330-32.  However, these are "merely factors to be considered to determine

whether sufficient control and domination is present to satisfy the first prong of the three-pronged

rule known as the instrumentality rule."  *Glenn*, 313 N.C. at 458, 329 S.E.2d at 332.

In the instant case, Plaintiffs allege:

48.  Upon information and belief, each of Moberk, L.L.C. and Moberk Two, L.L.C., was inadequately capitalized, failed to comply with corporate formalities, and was completely dominated and controlled by individual Defendants Moberg and Berk, such that it has no separate mind, will or existence of its own and was a mere instrumentality of the individual members.  Moberg and Berk used Moberk, L.L.C. and Moberk Two, L.L.C., as instruments of the causes of action pleaded herein in violation of the rights of the Plaintiffs.

49.  As a direct and proximate result of the actions of Moberk, L.L.C. and Moberk Two, L.L.C., and their members, Defendants Moberg and Berk, the entities of Moberk, L.L.C. and Two, L.L.C., should be disregarded in order to prevent fraud or otherwise achieve equality for the Plaintiffs, which have been damaged in an amount to be proven at trial as set forth in this Complaint.

(Compl. ¶¶ 48, 49).  Upon review of these allegations and the Complaint in its entirety, the Court

concludes that Plaintiffs have sufficiently alleged facts to sustain their claim for piercing the

corporate veil past the motion to dismiss stage.  Since piercing the corporate veil depends upon

facts that Plaintiffs must obtain through discovery, Defendants' Motion to Dismiss is premature

and is <u>denied</u> as to Count Nine of the Complaint.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss is hereby **DENIED**.

Signed: June 2, 2006

Richard L. Voorhees
Chief United States District Judge